# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **JOSSCO AUSTRALIAN PARTY, Ltd.,** ) | **CASE NO. 8:05CV79** |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **AG PROCESSING, INC.,** ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| Defendant and ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **KINDER MORGAN BULK TERMINALS, INC.,** ) | |
| ) | |
| Third-Party Defendant. ) | |

This matter is before the Court on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) filed by Third-Party Defendant, Kinder Morgan Bulk Terminals, Inc. ("KMBT"), based on the Court's alleged lack of personal jurisdiction over KMBT. (Filing No. 24). The matter has been fully briefed, and the Court has considered the evidence submitted, including the affidavits of Kevin Jones and Glen Heitritter. (Filing Nos. 26, 27).

Plaintiff, Jossco Australia Party, Ltd. ("Jossco"), claims Defendant and Third-Party Plaintiff, Ag Processing, Inc. ("AGP"), breached a product supply agreement between Jossco and AGP. (Filing No. 34, hereafter "Amended Complaint" ¶¶ 5,14). Jossco purchased soybean meal (the "Jossco cargo") from AGP, and the cargo was allegedly damaged when it got wet before or while it was loaded onto an ocean vessel. (Amended Complaint ¶¶ 5-9). AGP filed a Third Party Complaint against KMBT, claiming KMBT is

responsible for the damage to the Jossco cargo because KMBT transported the cargo from the rail car to the ocean vessel at KMBT's loading terminal in Longview, Washington. (Filing No. 38, hereafter "Third Party Complaint" ¶¶ 29-51). AGP clams KMBT is liable under theories of negligence and breach of contract. (*Id.* ¶¶ 41-51).

This matter is before the Court based on diversity jurisdiction under 28 U.S.C. § 1332. There is diversity of citizenship because Defendant and Third-Party Plaintiff, AGP, is incorporated in Iowa, with its principal place of business in Omaha, Nebraska, (Third Party Complaint ¶¶ 2, 30),[1] and Third-Party Defendant KMBT is incorporated in Louisiana, with its principal place of business in Sorrento, Louisiana. (*Id.* ¶ 31). AGP alleges the amount in controversy exceeds $75,000. (*Id.* ¶ 32).

### *Standard*

To survive a 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state. If jurisdiction is controverted, the plaintiff has the burden of proving the jurisdictional facts. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259-60 (8th Cir. 1974)). The plaintiff's showing must be tested by affidavits and exhibits presented in support and in opposition to the motion. *Id.*

---

[1] Plaintiff Jossco Australia Party, Ltd., alleges in its Amended Complaint that AGP is incorporated in Nebraska, with its principal place of business in Omaha, Nebraska. (Filing No. 34 ¶ 2). Regardless of whether AGP is incorporated in Nebraska or Iowa, AGP and KMBT have diversity of citizenship for purposes of diversity jurisdiction.

*Background*

Jossco entered into a product supply agreement ("Agreement #1") with AGP, to purchase the Jossco cargo. (Amended Complaint ¶¶ 1, 5). Under the terms of Agreement #1, AGP was responsible for transporting and delivering the Jossco cargo from Omaha, Nebraska, to Longview, Washington, to be loaded on the ocean vessel, M/V Pac King (the "vessel"). (Amended Complaint ¶ 6). Furthermore, Agreement #1 specified that the risk of loss would remain on AGP until the Jossco cargo was completely loaded on the vessel. (*Id.* ¶ 7).

Loading began on January 22, 2002, in Longview, Washington, and lasted for several days. (*Id.* ¶ 8). The Amended Complaint alleges the Jossco cargo became wet prior to or during the loading process. (*Id.* ¶ 9). The Amended Complaint further alleges that the Jossco cargo was delivered to three locations in New Zealand, and upon arrival, the Jossco cargo was damaged, contaminated and unusable. (*Id.* ¶ 10). Jossco claims AGP is liable under a breach-of-contract theory in the amount of $1,284,747.50 USD for the damages caused by AGP's breach. (*Id.* ¶ 16).

In response to Jossco's Amended Complaint, AGP filed an Answer to Amended Complaint and Third Party Complaint against KMBT. (Filing No. 38). KMBT operates a loading terminal in Longview, Washington ("Longview terminal"). (Third Party Complaint ¶ 35). AGP alleges that it had an agreement ("Agreement #2") with KMBT, whereby AGP would deliver cargo by rail car to Longview terminal to be loaded on a vessel. (*Id.* ¶ 37). AGP claims KMBT is liable under theories of negligence and breach of contract for any damages to the Jossco cargo and seeks indemnification for any and all liability stemming

from Jossco's claims against AGP.  (*Id.* ¶ 41-51).  KMBT filed a 12(b)(2) motion, claiming that the Court lacks personal jurisdiction over KMBT.  (Filing No. 25).

KMBT alleges that it does not conduct any business in Nebraska; has never sought or obtained a certificate to conduct business in Nebraska; has not appointed an agent in Nebraska; has never advertised in Nebraska; and has never had any employees in Nebraska. (Filing No. 26, Ex. 1, hereafter "Jones Aff." ¶ 5).  KMBT claims it has no assets, property, facilities, or offices in Nebraska.  (*Id.* ¶ 6).  Furthermore, KMBT alleges it did not solicit the loading work involving the Jossco cargo, which is the subject of AGP's claims against KMBT.  (*Id.* ¶ 7).

The relationship between AGP and KMBT stems from a relationship between AGP and International Raw Materials, Ltd. ("IRM"), KMBT's predecessor at the Longview terminal.  (Filing No. 27, Ex. 2, hereafter "Heitritter Aff." ¶ 5).  AGP had a contract with IRM to transport AGP's soybean meal through Longview terminal.  (Heitritter Aff. ¶ 5).  AGP alleges that the materials AGP shipped to the Longview terminal constituted over half of Longview terminal's shipping volume.  (Heitritter Aff. ¶ 8).  KMBT assumed management of the Longview terminal from IRM on October 17, 2001.  (*Id.*).  In October or November 2001, KMBT's Western Regional Manager, Kevin Jones, traveled to Omaha, Nebraska, to discuss KMBT's future relationship with AGP.  (*Id.* ¶ 6).  At this time, Jones and representatives of AGP discussed AGP's future Longview terminal needs.  (Jones Aff. ¶ 10).

During the October or November 2001 meeting, AGP and KMBT also discussed the possibility of entering into a joint venture at Grays Harbor, Washington.  (Filing No. 26, Ex. 1, hereafter "Jones Aff." ¶ 10).  Both AGP and KMBT acknowledge that they entered into

4

a five-year Confidentiality Agreement, that granted exclusive jurisdiction to the federal or state court of Douglas County, Nebraska, for any claims arising out of the Confidentiality Agreement.  (Jones Aff. ¶ 10; Heitritter Aff. ¶ 10).  However, AGP and KMBT have a difference of opinion regarding the purpose of the Confidentiality Agreement.  AGP alleges that the parties agreed to conduct their future business relating to the Longview terminal under the terms of the Confidentiality Agreement.  (Heitritter Aff. ¶ 10).  On the other hand, KMBT claims AGP and KMBT entered into the Confidentiality Agreement to facilitate further discussions regarding a possible joint venture in Grays Harbor, Washington.  (Jones Aff. ¶ 10).  KMBT claims there was no contractual relationship between KMBT and AGP regarding the Longview terminal.  (*Id.* ¶ 8).

With respect to the Jossco cargo, which is the subject of this lawsuit, AGP alleges AGP and KMBT communicated by telephone and electronic mail to schedule a January 2002 delivery to the Longview terminal. (Heitritter Aff. ¶ 11).  The process began in the Fall of 2001 when Jossco purchased the soybean meal from AGP.  (*Id.*).  Jossco then chartered a vessel to carry the cargo to its foreign destination.  (*Id.*).  AGP claims that it communicated with KMBT on daily or weekly basis in order to coordinate the arrival of the cargo by rail car with the arrival of the chartered vessel in Longview terminal.  (*Id.*).  The bill of lading that accompanied the Jossco cargo named KMBT as the consignee.  (Jones Aff. ¶ 8).

In January 2002, Jones met with AGP representatives in Denver, Colorado, to discuss again the possibility of a joint venture in Grays Harbor.  (*Id.* ¶10).  In March 2003, a year after the Jossco cargo incident, KMBT sent a terminal agreement to AGP, and AGP signed and executed this agreement in May 2003.  (*Id.* ¶ 11).  In May 2004, Jones traveled

5

to Omaha, Nebraska, to meet with AGP, which had begun operating a facility in Grays Harbor.  (*Id.* ¶ 10)*.*  The joint venture between AGP and KMBT never came to fruition. (*Id.*).

### *Discussion*

A federal court in a diversity action may exercise personal jurisdiction over a defendant if two requirements are satisfied: 1) the defendant's activity must fall within the scope of the state long-arm statute; and 2) the exercise of jurisdiction may not violate federal due process standards of fair play and substantial justice.  *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir. 2004).

The Nebraska long-arm statute reaches to the extent permitted by the Due Process Clause of the Fourteen Amendment.  *Quality Pork Int'l v. Rupari Foods Servs.*, 675 N.W.2d 642, 649 (Neb. 2004).[2]  In *Quality Pork*, the Nebraska Supreme Court found that a Florida corporation's oral contract with a Nebraska company, its acceptance of invoices, and its

---

[2]The Nebraska long-arm statute provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:
    (a) Transacting any business in this state;
    (b) Contracting to supply services or things in this state;
    (c) Causing tortious injury by an act or omission in this state;
    (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
    (e) Having an interest in, using, or possessing real property in this state; or
    (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (Reissue 1995).

payment of two orders constituted "transacting business" under Nebraska's long-arm statute, even though the Florida corporation had not registered to do business in Nebraska and had made no sales in Nebraska. *Id.* at 649-50. Like the Florida corporation in *Quality Pork*, KMBT agreed to provide loading services to AGP at the Longview terminal, received a bill of lading for the Jossco cargo, loaded the Jossco cargo, and accepted compensation for its services. Furthermore, a representative of KMBT traveled to Nebraska to discuss future business relations with AGP at the Longview terminal and a future joint venture in Grays Harbor, Washington. (Jones Aff. ¶¶ 9, 10). Under the *Quality Pork* analysis, I conclude that KMBT's activities are sufficient to constitute "transacting business" under Nebraska's long-arm statute.

The Due Process Clause requires that a defendant have sufficient contact with the forum so as not to offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). A nonresident defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Moreover, for specific jurisdiction, it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be "random," "fortuitous," "attenuated," or the result of unilateral activity of a third person or another party. *Id.*

Five factors that have been used by the Eighth Circuit Court to determine whether a defendant's contacts with the forum state are sufficient to support an exercise of personal jurisdiction consistent with due process are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).[3]

I conclude that this Court has specific personal jurisdiction over KMBT because it has purposefully directed its activities at AGP, which has its principal place of business in Omaha, Nebraska, and because the claims in the Third Party Complaint "relate to" these activities. *See Burger King,* 471 U.S. at 472. The undisputed evidence is that KMBT representative, Kevin Jones, traveled to Omaha, Nebraska, in the Fall of 2001 to discuss AGP's future loading service needs at the Longview terminal. (Jones Aff. ¶ 10). KMBT communicated a desire to continue an ongoing business relationship with AGP. At this meeting in Omaha, Nebraska, KMBT and AGP also discussed a potential joint venture and entered into a five-year Confidentiality Agreement, granting exclusive jurisdiction to either the United States District Court for the District of Nebraska or Douglas County, Nebraska, state court. (*Id.*). Furthermore, KMBT and AGP communicated by e-mail and telephone to coordinate the arrival of the Jossco cargo with the arrival of the chartered vessel. (Heitritter Aff. ¶ 12).

---

[3] The third factor was elaborated upon to emphasize the distinction between specific and general jurisdiction. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994). The fourth and fifth factors are of secondary importance and are not determinative. *See Lakin*, 348 F.3d at 711-12; *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).

I find that this evidence, when viewed in light of the *Burlington Industries* factors, establishes that KMBT purposefully availed itself of the privilege of conducting activities in Nebraska, and so could reasonably have anticipated being forced to defend this lawsuit in Nebraska.  The contacts were not "random," "fortuitous," or "isolated," or no more than "[t]he unilateral activity of those who claim some relationship with a nonresident defendant." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984); *Hanson v. Denckla*, 357 U.S. 235 (1958). Instead, they show that KMBT "purposefully avail[ed] itself of the privilege of conducting activities within" Nebraska.

KMBT argues that the claims do not "arise out of or relate to" its activities in Nebraska, and therefore, the Court lacks personal jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).  KMBT contends that the Court lacks personal jurisdiction over it because KMBT's contacts with Nebraska relate to a potential joint venture in Grays Harbor, Washington, rather than the Longview terminal.  However, KMBT admits that after KMBT assumed management of the Longview terminal and prior to the events giving rise to this lawsuit, KMBT representative, Kevin Jones, traveled to Nebraska to discuss AGP's future Longview terminal needs.  (Jones Aff. ¶ 10). By sending a representative to Nebraska, KMBT evidenced a desire to maintain an ongoing business relationship with AGP at the Longview terminal.  AGP sent the Jossco cargo to the Longview terminal pursuant to AGP's and KMBT's ongoing business relationship.  Furthermore, evidence indicates the parties exchanged e-mails and telephone calls from the Fall of 2001 to January 2002, in order to coordinate the arrival of the Jossco cargo with the arrival of the chartered vessel, and the bill of lading

9

accompanying the Jossco cargo designated KMBT as the consignee.  (Heitritter Aff. ¶ 12, 13).

I conclude that the contacts between KMBT and Nebraska are sufficiently related to the AGP's claims to make it fair and reasonable for the Court to assert personal jurisdiction over KMBT.  Maintenance of this suit in the District of Nebraska "does not offend 'traditional notions of fair play and substantial justice,'" which are the touchstones of the constitutional due process protections. *International Shoe,* 326 U.S. at 316  (*quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

For the reasons stated in this memorandum,

IT IS ORDERED:

The Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 24), submitted by Third-Party Defendant, Kinder Morgan Bulk Terminals, Inc., is denied.

DATED this 26th day of August, 2005.

                BY THE COURT:

                s/Laurie Smith Camp
                United States District Judge