# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JOSSCO AUSTRALIAN PARTY, Ltd.,** | ) ) ) | **CASE NO. 8:05CV79** |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| **AG PROCESSING, INC.,** | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) ) | **MEMORANDUM** |
| vs. | ) ) ) | **AND ORDER** |
| **KINDER MORGAN BULK TERMINALS, INC.,** | ) ) ) ) | |
| Third-Party Defendant, | ) ) ) | |
| vs. | ) ) ) | |
| **GEARBULK, INC. f/k/a GEARBULK IMT LINES, INC. f/k/a BHP INTERNATIONAL TRANSPORT MARINE LINES,** | ) ) ) ) ) | |
| Third-Party Defendant. | ) | |

This matter is before the Court on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) filed by Third-Party Defendant Gearbulk, Inc. ("Gearbulk"), based on the Court's alleged lack of personal jurisdiction over Gearbulk. (Filing No. 45). The matter has been fully briefed, and the Court has considered the evidence submitted. For the reasons stated in this Memorandum, the Court grants Gearbulk's Motion to Dismiss.

*Standard*

To survive a 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state. If jurisdiction is controverted, the plaintiff has the burden of proving the jurisdictional facts. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259-60 (8th Cir. 1974)). The plaintiff's showing must be tested by affidavits and exhibits presented in support of and in opposition to the motion. *Id.* Further, the court must view the evidence in the light most favorable to the plaintiff and must resolve all factual conflicts in its favor. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).

*Background*

This action originated as a lawsuit between Plaintiff Jossco Australia Party Limited ("Jossco") and Defendant AG Processing, Inc. ("AGP"), a Nebraska entity, for breach of a product supply agreement. (Filing No. 34 ("Amended Complaint")). Under the terms of the agreement, AGP was responsible for transporting and delivering soybean meal from Omaha, Nebraska, to Longview, Washington, to be loaded on the ocean vessel M/V Pac King. (Amended Complaint ¶ 6). The Amended Complaint alleges that the soybean meal became wet prior to or during the loading process and was in a damaged condition upon arrival in New Zealand. (*Id.* ¶¶9,10).

In response to Jossco's Amended Complaint, AGP filed a Third Party Complaint against Kinder Morgan Bulk Terminals ("KMBT"), which operates a loading terminal in Longview, Washington ("Longview Terminal"). (Filing No. 38 ("Third Party Complaint")

¶35).  AGP alleges that it had an agreement with KMBT, whereby AGP would deliver cargo by rail car to Longview Terminal to be loaded on a vessel.  (*Id.* ¶37).  AGP claims KMBT is liable under theories of negligence and breach of contract for any damages to the Jossco cargo and seeks indemnification for any and all liability stemming from Jossco's claims against AGP.  (*Id.* ¶¶41-51).  After the Court found it had personal jurisdiction over KMBT, KMBT filed a Third Party Complaint against Gearbulk, claiming that Gearbulk is liable under the theory of breach of contract indemnity.  (Filing No. 43-1 ("Amended Third Party Complaint") ¶¶66-75).

The Amended Third Party Complaint alleges that Gearbulk owned and or chartered the M/V Pac King.  (*Id.* ¶36).  According to Thomas Henderson, former President of Gearbulk, Gearbulk was the charterer of the M/V Pac King. (Filing No. 46-3 ("Henderson Aff.") ¶13).  Gearbulk claims that it was "in the business of providing a liner service for oceangoing cargo between Australia, New Zealand and the west coast of the United States of America and Canada."  (*Id.* ¶5).  Gearbulk was a Delaware corporation before merging into a New York corporation, on March 8, 2005.  (Amended Third Party Complaint ¶36).[1]

KMBT alleges that Gearbulk issued a contract of indemnity, requesting KMBT to load the M/V Pac King and agreeing to indemnify against possible rain damage.  (*Id.* ¶67).  KMBT claims that Gearbulk agreed that any damage from rain would be Gearbulk's responsibility. (*Id.*).  KMBT alleges that it is a third-party beneficiary of Gearbulk's letter of indemnity.  (*Id.* ¶70).  KMBT claims that Gearbulk had a duty to insure that the M/V Pac King was seaworthy, the cargo holds were fit, the vessel was clean for loading, and the

---

[1]The Court will collectively refer to Gearbulk, Inc., and Gearbulk IMT as "Gearbulk" throughout this Memorandum and Order.

cargo was protected. (*Id.*¶68). KMBT alleges that Gearbulk breached its duties and the indemnity agreement. (*Id.* ¶71). If the Court determines that Jossco's claims against AGP and AGP's claims against KMBT are valid, KMBT alleges that it is entitled to indemnification from Gearbulk for all damages in connection with Jossco's and AGP's claims. (*Id.* ¶75).

Gearbulk filed a Rule 12(b)(2) Motion to Dismiss, alleging that the Court lacks personal jurisdiction over Gearbulk. (Filing No. 45). Gearbulk claims that it has never sold or made any products in Nebraska, does not own any property in Nebraska, has no employees in Nebraska, does not conduct business in Nebraska, has never solicited business in Nebraska, has never entered into any contracts in Nebraska for the carriage of goods, has never transported goods into or out of Nebraska, and has never made, sold, or grown any products on which the claims in the lawsuit are based. (Filing No. 45 at 2; Henderson Aff. ¶¶4-11; Filing No. 46-2 ("Sheils Aff.") ¶¶4-7).

### *Discussion*

A federal court in a diversity action may exercise personal jurisdiction over a defendant if two requirements are satisfied: 1) the defendant's activity must fall within the scope of the state long-arm statute;[2] and 2) the exercise of jurisdiction may not violate

---

[2]The Nebraska long-arm statute provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:
    (a) Transacting any business in this state;
    (b) Contracting to supply services or things in this state;
    (c) Causing tortious injury by an act or omission in this state;
    (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business,

4

federal due process standards of fair play and substantial justice. *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir. 2004). Nebraska's long-arm statute has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77 (1995). Thus, constitutional limits will dictate whether jurisdiction over Gearbulk is proper.

The Due Process Clause requires that a defendant have sufficient contact with the forum so as not to offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). A nonresident defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Moreover, for specific jurisdiction,[3] it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

---

> engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
> (e) Having an interest in, using, or possessing real property in this state; or
> (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
>
> (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536.

[3]KMBT asserts that the Court has specific jurisdiction only over Gearbulk. (Opposition Brief at 11 n.1).

5

(1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Purposeful availment" means that the defendant's contacts with the forum state must not be "random," "fortuitous," "attenuated," or the result of unilateral activity of a third person or another party. *Id.*

Five factors that have been used by the Eighth Circuit Court to determine whether a defendant's contacts with the forum state are sufficient to support an exercise of personal jurisdiction consistent with due process are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).[4] In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

For purposes of this motion, the Court must view the evidence in the light most favorable to KMBT and must resolve all factual conflicts in its favor. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991). The alleged contacts between Gearbulk and Nebraska include the following: (1) Gearbulk's agent issued bills of lading and notices of readiness to AGP in Omaha, Nebraska (Filing No. 53-12); (2)

---

[4] The third factor was elaborated upon to emphasize the distinction between specific and general jurisdiction. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994). The fourth and fifth factors are of secondary importance and are not determinative. *See Lakin*, 348 F.3d at 711-12; *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).

6

Gearbulk's agent was in close contact with AGP's agent prior to and during the loading process; and (3) Gearbulk issued a letter of indemnity, agreeing it would be responsible for potential damage to the soybean meal.  (Opposition Brief at 12).  KMBT claims that Sunrise Shipping Agency, Inc. ("Sunrise Shipping") was an agent for Gearbulk and that Sunrise Shipping was "in almost constant communications with agents of AGP before the M/V Pac King's arrival in Longview, Washington."  (Opposition Brief at 5 ¶6).  KMBT alleges that Gearbulk's agents understood that the soybean meal originated in Nebraska. (*Id.*).  KMBT further claims that Sunrise Shipping was expressly authorized to issue bills of lading and issued three bills of lading to AGP in Omaha, Nebraska.  (*Id.* See Filing No. 53-13).  "[A] court may exercise personal jurisdiction over a defendant through the acts of his agent . . . "  *Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004).

KMBT further alleges that Gearbulk was formerly known as and sometimes conducted business as BHP International Marine Transport ("BHP").  (Amended Third Party Complaint; Opposition Brief at 3 ¶2).  BHP was listed as the owner of the M/V Pac King on the charterparty[5] between BHP and Jossco; therefore KMBT alleges Gearbulk was the owner of the M/V Pac King.  (Filing No. 53-4 at 2).  KMBT contends that Gearbulk purposely directed its efforts toward AGP in Nebraska and that Gearbulk's indemnification of damages to AGP's soybean meal established minimum contacts with Nebraska. (Opposition Brief at 13).  Finally, KMBT claims that the Court's "assertion of jurisdiction over Gearbulk would avoid piecemeal litigation and inconsistent results."  ( *Id.*).

---

[5]Charterparty refers to the contract between Jossco and BHP (Gearbulk) for the carriage of shipment of cargo.  The charterparty sets forth the terms of the contract and the obligations of the respective parties.  See Filing Nos. 53-3 and 54-4.

7

On the other hand, Gearbulk maintains it was the merely the time charterer and not the owner of the M/V Pac King, citing Gearbulk's letter to the master and owner of the M/V Pac King, where Gearbulk agreed to indemnify the master and owners of the M/V Pac King.  (See Filing No. 53-22).  Gearbulk asserts that the charterparty governing the soybean cargo was between Jossco, an Australian company and Gearbulk, a Delaware corporation based in California.  (Filing No. 47 ("Support Brief") at 3).  Gearbulk claims that there was no direct communication between Gearbulk and anyone in Nebraska.  (*Id.*). Gearbulk alleges that under the terms of the charterparty, it was irrelevant who provided the soybean cargo to the vessel.  (*Id.* at 6).  Finally, Gearbulk argues that Jossco's unilateral act of entering into a contract with a Nebraska entity does not establish jurisdiction over Gearbulk.  (*Id.* at 6-7).

On January 24, 2002, AGP's agent, Blue Water Pacific, a Portland, Oregon entity, sent an e-mail to "Master, Owner/Operator of the M/V Pac King" and Gearbulk's agent, Sunrise Shipping, stating:

> On behalf of AG Processing Inc, we hereby reserve the right to claim any losses or other penalties suffered resulting from the subject vessels failure to pass hold no. 2 inspections and/or her imminent departure from the Columbia River prior to full filling her cargo lifting obligations at Kinder Morgan Berth, Longview, Washington U.S.A.  (Filing No. 53-21).

Later that day, Gearbulk issued the following letter of indemnity addressed to the Master of the M/V Pac King:

> We, Gearbulk IMT Lines, hereby request you to open holds #2 and #4 to load soy bean meal at Longview Washington on Thursday January 24, 2002.
>
> We confirm that possible wetting damage to soy bean meal may occur as a result of our request.  Gearbulk IMT Lines now indemnify the Master and Owners of [M/V Pac King] and confirm that any damage from rain will be the

8

responsibility of BHP International Marine Transport Line.  (Filing No. 53-22).

The letter makes no mention of AGP, the Nebraska entity in this case; it was addressed to the Master of the M/V Pac King; and it explicitly states that Gearbulk agreed to indemnify the Master and Owners of the M/V Pac King. (*Id.*).  Furthermore, although the soybean meal discussed in the letter of indemnity originated in Nebraska; the soybean meal was located in Washington at the time the letter was issued.  Gearbulk had no contract or relationship with AGP; rather, Gearbulk's involvement in this matter was a result of Gearbulk's relationship with Jossco.  If Jossco had not made an agreement with AGP to purchase soybean meal, there is no indication that Gearbulk would have had any contact with AGP or other Nebraska entities.  "Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state are the result of unilateral acts performed by someone other than the defendant, or whether the defendant himself has acted in a manner which creates substantial connections with the forum state, resulting in the defendant's purposeful availment of the benefits and protections of the law of the forum state."  *Quality Pork Intern. v. Rupari Food Services, Inc.*, 675 N.W.2d 642, 651 (Neb. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

When determining whether there is specific jurisdiction over a nonresident defendant, the focus is on the relationship between the defendant and the forum.  Here, other than e-mail communications exchanged between Gearbulk's agent, Sunrise Shipping, and AGP's agent, Blue Water, KMBT fails to demonstrate that Gearbulk "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471

9

U.S. 462, 475 (1985). Interstate communications alone, such as phone calls, mail or e-mails, are insufficient to establish jurisdiction. *See Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir.1995) (citing *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982)); *see also Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.*, 51 F.3d 1383, 1388 (8th Cir.1995) (citing *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir.1993)). There is no evidence, other than these isolated communications with AGP's agent, that Gearbulk had any contact with Nebraska. The Court finds that Gearbulk's contacts with Nebraska are too attenuated for the Court to assert jurisdiction over Gearbulk.

Accordingly,

IT IS ORDERED:

Third Party Defendant Gearbulk Inc.'s Motion to Dismiss (Filing No. 45) is granted.

DATED this 18th day of January, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge